## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JASON M. MALIK [E-Filer]

    Plaintiff,

~v~

EQUIFAX INFORMATION SERVICES, LLC;
AUTO BUYERS CREDIT, LLC c/b/a ABC AUTO FINANCE;
WEBBANK d/b/a FINGERHUT;
SWISS COLONY d/b/a HOME AT FIVE; and
FIRST PREMIER BANK d/b/a FIRST PREMIER BANKCORP

    Defendants.

_____/

Case: 2:16-cv-10477
Judge: Steeh, George Caram
MJ: Davis, Stephanie Dawkins
Filed: 02-10-2016 At 10:00 AM
CMP MALIK V. EQUIFAX INFORMATION SERVICES ET AL (DA)

*JASON MALIK states the following claims for relief:*

### PLAINTIFFS' INITIAL COMPLAINT

1. This is an action for declaratory relief, brought by a consumer against multiple creditors and credit reporting agencies, in response to their violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.*, the Michigan Motor Vehicle Sales Finance Act ("MMVSFA"), M.C.L. § 492.101 *et seq.*, and the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901 *et seq.*

### PARTIES

2. Jason M. Malik, hereinafter "Mr. Malik" resides in Warren, MI.

3. Mr. Malik is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

4. Defendant Equifax Information Services, LLC, hereinafter "Equifax" is a credit reporting agency as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

5. Auto Buyers Credit, LLC, hereinafter "ABC" is a furnisher as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

6. Webbank d/b/a Fingerhut, hereinafter "Fingerhut" is a furnisher as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

7. Swiss Colony d/b/a Home at Five, hereinafter "Home at Five" is a furnisher as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

8. First Premier Bank d/b/a First Premier Bankcorp, hereinafter "FPB" is a furnisher as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

9. ABC is an "Installment Seller" as defined by the Michigan Motor Vehicle Sales Finance Act, M.C.L. § 492.102j. Alternatively, ABC is a "Licensee" as defined by the Michigan Motor Vehicle Sales Finance Act, M.C.L. § 492.102n.

## JURISDICTION

10. This lawsuit is being brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* and as such this Court has jurisdiction.

11. This Court also has jurisdiction under 28 U.S.C. §§ 1331, 1337.

12. This Court has supplemental jurisdiction over Mr. Malik's state law claims under 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

13. Defendant Equifax is a Georgia Limited Liability Company, doing business in Michigan, with its registered agent, CSC-Lawyers Incorporating Service (Company), maintaining an office at 601 Abbott Road, East Lansing, MI 48823.

14. Defendant ABC is a Michigan Limited Liability Company, doing business in Michigan, with its registered agent Jeff Braatz, maintaining an office at 241 E. Saginaw, East Lansing, MI 48623.

15. Defendant Fingerhut is a Corporation, doing business in Michigan, with an address of 6250 Ridgewood Road, St. Cloud, MN 56303.

16. Defendant Home at Five is a Corporation, doing business in Michigan, with an address of 1112 7th Ave, Monroe, WI 53566.

17. Defendant First Premier is a Corporation, doing business in Michigan, with an address of 3820 N. Louise Ave, Sioux Falls, SD 57107.

## FACTUAL ALLEGATIONS (EQUIFAX)

18. Since 2014 Equifax has been reporting inaccurate information to Mr. Malik's Equifax consumer report.

19. With regards to #18, Equifax is reporting inaccurate personal information about Mr. Malik, such as inaccurate addresses, inaccurate name(s), and inaccurate phone number(s).

20. With regards to #19 Equifax refuses to allow Mr. Malik to dispute the inaccurate addresses and inaccurate names. Equifax informed Mr. Malik, that the only way Equifax would allow such a dispute is if Mr. Malik provided Equifax with a copy of his drivers license, a copy of his social security card, and a copy of his w-2. There is nothing in the FCRA that purports that Mr. Malik or any other consumer for that matter must supply Equifax or any other consumer reporting agency with any information to submit a dispute.

21. With regards to #20, the FCRA specifically states that *any* inaccurate information may be disputed by the consumer. Moreover, that upon the receipt of the dispute by the consumer,

the credit reporting agency, must initiate an investigation. Equifax willfully refuses to comply with this aspect when it is in regards to personal information.

22. Equifax is also reporting inaccurate credit information about Mr. Malik in Equifax's credit report. Mr. Malik has informed Equifax of this, and most specifically attempted to contact Equifax's counsel in Georgia in an attempt to resolve the issues short of litigation, no response has been forthcoming.

23. With regards to #22 Equifax is reporting inaccurate payment history, inaccurate dates of first major delinquency, inaccurate historical status, such as not being able to locate Mr. Malik, inaccurate pay status, inaccurate term(s), duplicate derogatory accounts, accounts that are due to identity theft, which are fraudulent, and furthermore derogatory accounts that Mr. Malik has never had.

24. Most specifically, Mr. Malik has directly disputed fraudulent accounts that Equifax is reporting which are:

    A) First Premier 543362808201****

    B) Home at Five 73237088****

    C) Webbank / Fingerhut 636992103118****

25. Mr. Malik's request for investigation and/or reinvestigation and to correct and/or delete such inaccurate information are envisioned by 15 U.S.C. § 1681i

26. Mr. Malik's repeated requests for investigation all included sufficient information and/or documentation to provide actual notice that the information was inaccurate and the source of the information was not reliable.

27. Because of Equifax's refusal to accept and act on Mr. Malik's disputes, which are governed under the FCRA, Mr. Malik has no recourse to correct Equifax's errors aside from resorting to litigation.

28. Equifax maintained the inaccurate information regarding various accounts and personal information in Mr. Malik's Equifax consumer credit file as a result of the verification from the source(s) of the disputed information and Equifax's own failure to conduct a proper investigation and/or reinvestigation of the disputed information.

29. Equifax has violated the FCRA by its refusal to investigate Mr. Malik's dispute(s).

30. Equifax has violated the FCRA by blatantly refusing to allow Mr. Malik to dispute inaccurate personal information on his Equifax credit report, by refusing to allow said disputes without Mr. Malik providing Equifax with multiple forms of documentation.

31. Equifax has violated the FCRA by not allowing a re-investigation by Mr. Malik as they have not deemed his request(s) "frivolous".

32. Equifax has violated the FCRA by reporting information it knows is inaccurate and/or failing to maintain reasonable procedures to maintain accuracy on Mr. Malik's Equifax credit report.

33. Equifax's actions were willful in nature.

34. To the extent that Equifax's actions were not willful, they were at least negligent.

35. As an actual and proximate result of the acts and omissions of Equifax and its employees, Mr. Malik has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional distress, and suffering which he should be compensated in an amount to be established by jury and at trial.

**FACTUAL ALLEGATIONS (ABC)**

36. On or around July 11, 2013 Mr. Malik purchased a vehicle from New Combs Auto Sales in Lapeer Michigan.

37. Mr. Malik executed a Retail Installment Sale Contract the "RISC" for the purchase of the vehicle. The "holder" of the RISC was ABC. The RISC stated clearly at the top "Retail Installment Sale Contract Simple Finance Charge."

38. The amount financed was $11,378.34.

39. Mr. Malik's payments were set up via auto pay off his debit card. The first payment did not get processes as Mr. Malik did not have sufficient funds in his account to cover said payment.

40. With regards to #65 ABC lists any not processed credit card payment(s) as "returned" and charges a fee of $35.00, such as if it was a check or EFT that was returned. However, that is not the case.

41. On September 11, 2013 Mr. Malik made a "money gram" payment to ABC in the amount of $350.00. ABC disbursed the whole payment right to interest as shown in the ledger they provided Mr. Malik, however the balance did not decrease.

42. In November 2013 Mr. Malik's vehicle was repossessed for non payment, which Mr. Malik readily admits to. However, at the time of the repossession according to ABC's records, Mr. Malik had an alleged balance of $11,378.34. This is the same amount financed in the original contract, even though Mr. Malik had made a payment in the amount of $350.00.

43. Mr. Malik made a "money gram" payment to ABC on November 29, 2013 in the amount of $1,350.00. According to ABC's own ledger the balance *never* gets reduced, it stays the same at $11,378.74. However, ABC charges repossession fees, three (3) times, thus increasing said fee.

44. On January 8, 2014 Mr. Malik made an internet payment. Said payment was returned, at no fault of Mr. Malik's. After this payment was returned, Mr. Malik's alleged balance with ABC *increased* to #11,581.22. This amount is $202.88 more than what Mr. Malik originally financed, even though Mr. Malik had paid ABC $1,700.00 to that date, the balance had increased.

45. On February 04, 2014 Mr. Malik had an alleged balance of $11,450.66 (still more than Mr. Malik originally financed). On this day Mr. Malik made a phone payment of $2,136.00. ABC posted this payment on February 6, 2014. The alleged balance was only reduced to $10,081.74. However as shown in ABC's own ledger, they manually move money from principal to interest on several occasions.

46. On June 15, 2014, after making $782.68 worth of payments in two weeks during April 2014, Mr. Malik's vehicle was repossessed yet again. Mr. Malik was *not* behind on his payments when this occurred. Nevertheless Mr. Malik had to money gram ABC money to obtain his vehicle back.

47. Mr. Malik made a payment of well over $500.00 in regards to #65, yet the balance was only reduced by $160.71.

48. On August 08, 2014 Mr. Malik made a payment to ABC via his credit cards in the amount of $500.00, via an e-mail to an employee of ABC named "Gracie". Gracie was supposed to stop the bi-weekly automatic payments of $251.00 being charged to Mr. Malik's credit card as Mr. Malik was making his payment.

49. With regards to #74 the payment of $500,00 was successfully deducted from Mr. Malik's credit card. However, the payment for ABC was not processed by ABC. It was processed by American Lending Finance. American Lending Finance is a separate company from

ABC. However, Mr. Bassim Robin is the "registered agent" and listed on the states lara paperwork for ABC, American Lending Finance, and New Way motors, (which happens to be the entity that purchased Mr. Malik's vehicle), including a hand full of others in Michigan such as AutoSmart America and American Lending. In essence Mr. Robin is just playing a shell game, and violating numerous Michigan laws, and federal banking laws.

50. With regards to #49 the $251.00 payment was still deducted from Mr. Malik's credit card, yet was no honored because Mr. Malik did not have sufficient credit to cover it. However, ABC charged a "returned item" fee in the amount of $35.00. Moreover, ABC in its ledger returns a total of $412.00, thus raising the alleged balance $412.00. ABC stated this was from the $500.00 payment, yet that was never returned.

51. The accounting practices of ABC are a malfeasance at best, and at worst constitutes outright fraud, misrepresentation and negligence.

52. Most notably with regards to ABC 's callous disregard for the law, ABC *says before* Mr. Malik's auto insurance policy was to cancel, added "collateral protection coverage" "CPC" to the loan. This raised Mr. Malik's payments to $216.08. ABC had proof of Mr. Malik's policy and he sent it to ABC. However, Mr. Malik had adequate auto insurance on his vehicle. Nevertheless, ABC continued to charge Mr. Malik CPC even though ABC had the proof of Mr. Malik's vehicle insurance. Employees of ABC acknowledged that Mr. Malik had provided proof of his vehicle insurance.

53. On August 25, 2014 ABC sent Mr. Malik a letter. The letter stated that Mr. Malik was past due in the amount of $957.64 and that the payment was still $216.08, which included the

CPC. It further stated that Mr. Malik had an alleged balance with ABC in the amount of $9,251.67.

54. On August 26, 2014 ABC sent Mr. Malik another letter. The letter stated that Mr. Malik was past due in the amount of $957.64 and his payment was $216.08.

55. Mr. Malik knew this was in correct. Therefore Mr. Malik sent Gracie and e-mail stating that it was incorrect, and further that he was actually paid ahead and he had adequate insurance.

56. In response to Mr. Malik's e-mail to Gracie. ABC sent Mr. Malik a letter dates September 03, 2014. In this letter they alluded to the fact that they can charge for CPC, all the while while taking it of Mr. Malik's account. They further state that now ***Mr. Malik was paid ahead until September 04, 2014***. This is a far cry from the two letters they sent Mr. Malik in August stating he was nearly $1,000.00 behind. However, now they state that Mr. Malik's alleged balance was $9,874.80. This is over a $600.00 increase from ABC's letter just weeks before when they stated Mr. Malik was past due, yet with a smaller alleged balance. Now they said Mr. Malik is paid ahead, yet has a larger balance.

57. On September 15, 2014 Mr. Malik received a letter from ABC. This letter now stated that Mr. Malik was allegedly past due again, however it now showed an alleged balance of $9,163.67.

58. On September 19, 2014 American Lending Finance charged Mr. Malik's credit card in the amount of $205.00. Mr. Malik did not authorize ABC or American Lending Finance to charge his credit card in any such amount. All auto debits were cancelled with Gracie months prior, and furthermore said auto debits were in the amount of $251.00.

59. During this whole time Mr. Malik had these issues with ABC, ABC reported his account incorrectly to Experian and Trans Union credit reporting agencies. Mr. Malik disputed the trade-lines with the credit reporting agencies. However, ABC verified the inaccurate information with the credit reporting agencies.

60. ABC's action(s) by verifying the inaccurate information and reporting and continuing to report inaccurate information were and are in violation of the FCRA.

61. Mr. Malik filed complaints with the State of Michigan in regards to ABC's illegal and fraudulent practices. However, said complaints were never resolved and ABC bold faced lied to the State when responding to Mr. Malik's complaint, which Mr. Malik can show.

62. As this honorable Court can see, ABC's accounting practices are horrid at best, and fraudulent at worst.

63. Mr. Malik made over $5,678.68 in payments to ABC of which were not returned and accepted by ABC. Nevertheless, the balance was only reduced by $1,438.34. Between all the illegal and fraudulent fees, and ABC's manual moving of money from the principal to interest, Mr. Malik never had a chance.

64. The above affected Mr. Malik's ability to obtain a new vehicle loan or refinance the loan from ABC.

65. The inaccuracies remain in Mr. Malik's credit file.

66. ABC's actions were willful in nature.

67. To the extent that ABCs actions were not willful, they were at least negligent.

68. As an actual and proximate result of the acts and omissions of ABC and its employees, Mr. Malik has suffered actual damages and injury, including but not limited to, fear, stress,

mental anguish, emotional distress, and suffering which he should be compensated in an amount to be established by jury and at trial.

**FACTUAL ALLEGATIONS (FINGERHUT, HOME AT FIVE and FIRST PREMIER)**

69. On or around November 2015 Mr. Malik obtained his consumer reports, which consisted of his Experian, Equifax and Trans Union credit reports.

70. Said credit reports listed trade-lines, which were reporting negatively by the aforementioned defendants.

71. The trade-lines are reporting to the credit reporting agencies as follows:

    A) First Premier 543362808201****

    B) Home at Five 73237088****

    C) 636992103118****

72. Mr. Malik has disputed these inaccurate, false and misleading trade-lines on multiple occasions with the credit reporting agencies. Only to have said trade-lines verified.

73. Said trade-lines and/or accounts with the aforementioned Defendants are the result of "identity theft" and do not belong to Mr. Malik.

74. Mr. Malik has disputed the inaccurate trade line multiple times with the three credit reporting agencies. Nevertheless, said furnishers continued to report the trade lines inaccurately to the three credit reporting agencies, even on the face of Mr. Malik's multiple disputes.

75. The inaccuracies continue to remain in Mr. Malik's credit file.

76. The defendant's actions were willful in nature.

77. To the extent that the Defendant's actions were not willful, they were at least negligent.

78. As an actual and proximate result of the acts and omissions of the Defendant's and their employees, Mr. Malik has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional distress, and suffering which he should be compensated in an amount to be established by jury and at trial.

### COUNT I (EQUIFAX)
### Fair Credit Reporting Act

79. Mr. Malik incorporates the preceding allegation by reference.

80. Equifax continues to maintain inaccurate information relating to Mr. Malik's personal information, trade-lines including, but not limited to the ABC and CAC trade lines in its files on Mr. Malik.

81. Consequently, the consumer reports Equifax prepares relating to Mr. Malik contain disputed information and are inaccurate.

82. The appearance of the inaccurate information is the direct and proximate result of Equifax's failure to follow reasonable procedures to assure the maximum possible accuracy of Mr. Malik's credit reports, in violation of 15 U.S.C. §§ 1681e(b) and 1681o; alternatively, Equifax willfully failed to follow reasonable procedures to assure the maximum possible accuracy of Mr. Malik's credit reports, in violations of 15 U.S.C. §§ 1681e(b) and 1681n.

83. Equifax failed to conduct a reasonable investigation to determine whether the disputed information was inaccurate and failed to record the current status of the disputed information or to delete it from its files within 30 days of the dispute, in violation of the FCRA, 15 U.S.C. § 1681i.

84. Equifax negligently failed to conduct a reasonable investigation and/or reinvestigation, in violation of 15 U.S.C. §§ 1681i and 1681o; alternatively, Equifax willfully failed to

conduct a reasonable investigation and/or reinvestigation, in violation of 15 U.S.C. §§ 1681i and 1681n.

85. Equifax's actions were willful.

86. To the extent that Equifax's actions were not willful, they were at least negligent.

87. Mr. Malik has suffered damages as a result of these violations of the FCRA.

## COUNT II (ABC, FINGERHUT, HOME AT FIVE and FIRST PREMIER)
### Fair Credit Reporting Act

88. Mr. Malik incorporates the preceding allegations by reference.

89. ABC and the aforementioned Defendants were required under 15 U.S.C. § 1681 s-2(b), to respond to the request for investigation and/or reinvestigation initiated by Mr. Malik by completing an inquiry into the facts underlying each trade-line and providing accurate information to the credit reporting agencies regarding each trade-line

90. In the event that ACB and the aforementioned Defendants were unable to verify the information which they had reported, ABC and the aforementioned Defendants were required to advise the credit reporting agencies of this fact.

91. Following the investigation and/or reinvestigation, ABC and the aforementioned Defendants reported the erroneous credit information with the actual knowledge of errors, in violation of the FCRA, 15 U.S.C. § 1681s-2(b) and the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(1)(B).

92. In fact, ABC and the aforementioned Defendants refused to perform a reasonable investigation and/or reinvestigation, instead referring to "verify" inaccurate information with Equifax, Experian and Trans Union.

93. Following the investigation and/or reinvestigation, ABC and the aforementioned Defendants failed to notify the consumer reporting agencies to whom they reported credit

information that the debt was disputed, in violation of the FCRA 15 U.S.C. § 1681s-2(b), the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-1(a)(3).

94. ABC and the aforementioned Defendants negligently failed to put in place procedures to complete an adequate investigation and/or reinvestigation of disputed credit information in violation of 15 U.S.C. § 1681s-2(b) and 15 U.S.C. § 1681i and o; alternatively, ABC and CAC willfully refused to properly put in place adequate procedures to investigate and/or reinvestigate the inaccuracies in Mr. Malik's credit report in violation of 15 U.S.C. § 1681s-2(b) and 15 U.S.C. § 1681n.

95. ABC and the aforementioned Defendants failed to comply with the investigation requirements of the FCRA to conduct a reasonable investigation and/or reinvestigation, 15 U.S.C. § 1681s-2(b), including but not limited to the failure to report the account to the credit reporting agencies as disputed, and to permanently block the reporting of information found to be incomplete or inaccurate.

96. ABC and the aforementioned Defendants failed to perform an investigation and/or reinvestigation outside of their internal records when they were required to do so due to the specific information and evidence given to them by Mr. Malik in his disputes.

97. ABC and the aforementioned Defendants' actions were willful.

98. To the extent that ABC and the aforementioned Defendants' action were not willful, they were at least negligent.

99. Mr. Malik has suffered damages as a result of these violations of the FCRA.

### COUNT III (ABC, FINGERHUT, HOME AT FIVE and FIRST PREMIER)
### Michigan Consumer Protection Act

100.    Mr. Malik incorporates the preceding allegations by reference.

101. ABC and the aforementioned Defendants are engaged in trade and/or commerce as that term is defined in M.C.L. 445.902.

102. ABC and the aforementioned Defendants have engaged in one or more of the deceptive and unfair practices prohibited by the Michigan Consumer Protection Act, M.C.L. 445.903, including, but not limited to the following:

   a) Using deceptive representation or deceptive designations of geographic origin in connection with good or services;

   b) Representing that good or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that as person has sponsorship, approval, status, affiliation or connection that he or she does not have;

   c) Making false or misleading statement of fact concerning the reasons for, existence of, or amounts of price reductions;

   d) Representing to a party to whom goods or services are supplied that the goods or services are being supplied in response to a request made by or on behalf of the party, when they are not;

   e) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;

   f) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known to the consumer;

   g) Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has reason to know that the statement is not true;

h) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits; and

i) Making a representation of fact or statement of material fact to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

103. ABC and the aforementioned Defendants' actions were willful.

104. To the extent that ABC and the aforementioned Defendants' actions were not willful, they were at least negligent.

105. Mr. Malik has suffered damages as a result of these violations of the Michigan Consumer Protection Act.

106. Mr. Malik continues to suffer damages as a result of these violations of the Michigan Consumer Protection Act.

### COUNT IV (ABC)
### Misrepresentation

107. Mr. Malik incorporates the preceding allegations by reference.

108. The material representations were intended to induce the reliance of Mr. Malik.

109. The material representations did induce the reasonable reliance of Mr. Malik.

110. ABC made the material representations with actual knowledge of their falsity.

111. ABC made the material representations with reckless disregard for their truth or falsity.

112. ABC made the material representations even though it should have known that they were false.

113. The actions constitute a misrepresentation upon Mr. Malik by ABC.


114. ABC's actions were willful.

115. To the extent that ABC's actions were not willful, they were at least negligent.

116. Mr. Malik has suffered damages as a result of this misrepresentation.

117. As a result of this misrepresentation, Mr. Malik suffers continuing damages.

### COUNT V (ABC)
### Michigan Motor Vehicle Sales Finance Act

118. Mr. Malik incorporates the preceding allegations by reference.

119. ABC has failed and continually fails to properly complete all necessary terms of the installment contract as required by M.C.L. § 492.101 *et seq.*

120. ABC has violated and continues to violate M.C.L. § 492.118(3) in regards to misappropriating funds as it relates to the account of Mr. Malik.

121. ABC's actions were willful.

122. To the extent that ABC's actions were not willful, they were at least negligent.

123. Mr. Malik has suffered damages as set forth by reason of ABC's violations of the MMVSFA.

### TRIAL BY JURY

124. Mr. Malik hereby demands a trial by jury.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Mr. Malik respectfully requests that this Honorable Court grant the following relief:

1. *Assume jurisdiction over this case, including all supplemental claims;*

2. *Award actual damages;*

3. *Award statutory damages;*

4. *Award punitive damages;*


5. *Award treble damages;*

6. *Award statutory costs and attorney fees; and*

7. *Any other relief this Honorable Court deems just and proper.*

                                            Respectfully Submitted

                                            By: *Jason M Malik* (signature)
                                            Jason M. Malik
                                            Acting In Pro Se
                                            13621 Jenny Drive
                                            Warren, MI 48088
                                            586-429-1126
                                            jasonmatthew913@gmail.com

Date: **1-22-16**

JS 44 (12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
Jason M. Malik

**DEFENDANTS**
Equifax Information Services, LLC
Auto Buyers Credit, LLC
Webbank
Swiss Colony and First Premier Bank

**(b)** County of Residence of First Listed Plaintiff  Macomb
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Eaton
*(IN U.S. PLAINTIFF CASES ONLY)*

County in which action arose  Macomb

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jason M. Malik (Acting in Pro Se)
13621 Jenny Drive
Warren, MI 48088
586-429-1126

Case:2:16-cv-10477
Judge: Steeh, George Caram
MJ: Davis, Stephanie Dawkins
Filed: 02-10-2016 At 10:00 AM
CMP MALIK V. EQUIFAX INFORMATION SE
RVICES ET AL (DA)

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ○ 1  U.S. Government Plaintiff
- ● 3  Federal Question (U.S. Government Not a Party)
- ○ 2  U.S. Government Defendant
- ○ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business In This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business In Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ○ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ○ 625 Drug Related Seizure of Property 21 USC 881 | ○ 422 Appeal 28 USC 158 | ○ 375 False Claims Act |
| ○ 120 Marine | ○ 310 Airplane / ○ 365 Personal Injury - Product Liability | ○ 690 Other | ○ 423 Withdrawal 28 USC 157 | ○ 400 State Reapportionment |
| ○ 130 Miller Act | ○ 315 Airplane Product Liability / ○ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ○ 410 Antitrust |
| ○ 140 Negotiable Instrument | ○ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ○ 430 Banks and Banking |
| ○ 150 Recovery of Overpayment & Enforcement of Judgment | ○ 330 Federal Employers' Liability / ○ 368 Asbestos Personal Injury Product Liability | | ○ 820 Copyrights | ○ 450 Commerce |
| ○ 151 Medicare Act | ○ 340 Marine | | ○ 830 Patent | ○ 460 Deportation |
| ○ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ○ 345 Marine Product Liability | | ○ 840 Trademark | ○ 470 Racketeer Influenced and Corrupt Organizations |
| | | | | ● 480 Consumer Credit |
| ○ 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | | **LABOR** / **SOCIAL SECURITY** | ○ 490 Cable/Sat TV |
| ○ 160 Stockholders' Suits | ○ 350 Motor Vehicle / ○ 370 Other Fraud | ○ 710 Fair Labor Standards Act | ○ 861 HIA (1395ff) | ○ 850 Securities/Commodities/ Exchange |
| ○ 190 Other Contract | ○ 355 Motor Vehicle Product Liability / ○ 371 Truth in Lending | ○ 720 Labor/Management Relations | ○ 862 Black Lung (923) | ○ 890 Other Statutory Actions |
| ○ 195 Contract Product Liability | ○ 360 Other Personal Injury / ○ 380 Other Personal Property Damage | ○ 740 Railway Labor Act | ○ 863 DIWC/DIWW (405(g)) | ○ 891 Agricultural Acts |
| ○ 196 Franchise | ○ 362 Personal Injury - Medical Malpractice / ○ 385 Property Damage Product Liability | ○ 751 Family and Medical Leave Act | ○ 864 SSID Title XVI | ○ 893 Environmental Matters |
| | | ○ 790 Other Labor Litigation | ○ 865 RSI (405(g)) | ○ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ○ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ○ 896 Arbitration |
| ○ 210 Land Condemnation | ○ 440 Other Civil Rights / **Habeas Corpus:** | | ○ 870 Taxes (U.S. Plaintiff or Defendant) | ○ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ○ 220 Foreclosure | ○ 441 Voting / ○ 463 Alien Detainee | | ○ 871 IRS—Third Party 26 USC 7609 | ○ 950 Constitutionality of State Statutes |
| ○ 230 Rent Lease & Ejectment | ○ 442 Employment / ○ 510 Motions to Vacate Sentence | | | |
| ○ 240 Torts to Land | ○ 443 Housing/ Accommodations / ○ 530 General | | | |
| ○ 245 Tort Product Liability | ○ 445 Amer. w/Disabilities - Employment / ○ 535 Death Penalty | **IMMIGRATION** | | |
| ○ 290 All Other Real Property | ○ 446 Amer. w/Disabilities - Other / **Other:** ○ 540 Mandamus & Other | ○ 462 Naturalization Application | | |
| | ○ 448 Education / ○ 550 Civil Rights | ○ 465 Other Immigration Actions | | |
| | ○ 555 Prison Condition | | | |
| | ○ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from Another District (specify)
- ○ 6 Multidistrict Litigation

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. 1681 et seq.  The Fair Credit Reporting Act
Brief description of cause:
Violations of the Fair Credit Reporting Act and severl Michigan State Statutes

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ● Yes  ○ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: January 23, 2013
SIGNATURE OF ATTORNEY OF RECORD  *[signature: Jason M Malik]*

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed? ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.) ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

   Notes :