UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON M. MALIK,

        Plaintiff,

                                      CASE NO. 16-CV-10477

    v.                              HONORABLE GEORGE CARAM STEEH

EQUIFAX INFORMATION SERVICES,
LLC, et al.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT RAC ACCEPTANCE EAST'S MOTION TO DISMISS AND COMPEL
ARBITRATION (DOC. 31) AND OVERRULING PLAINTIFF'S OBJECTION (DOC. 38)**

        Plaintiff filed an amended complaint (Doc. 12) alleging that defendant RAC

Acceptance East, LLC d/b/a Acceptance Now ("RAC") violated the Fair Credit Reporting

Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by, among other things, submitting inaccurate

information concerning Plaintiff to various credit reporting agencies.  Now before the

Court is RAC's motion to dismiss Plaintiff's claim against RAC and compel arbitration.

(Doc. 31).  RAC claims that the instant action falls within an arbitration agreement

signed by Plaintiff and is subject to dismissal.  The Court, having reviewed both parties'

filings, has determined that a hearing is unnecessary.  *See* E.D. Mich. LR 7.1(f)(2).

The Court will  grant RAC's motion, for the reasons explained below.

**I. BACKGROUND**

        In January 2012, Plaintiff leased bedroom furniture from RAC under a lease-to-

own arrangement.  (Pl.'s First Am. Compl. ¶¶ 89-90).  Plaintiff returned the furniture to

RAC in October 2012.  (*Id.* ¶ 94).  Plaintiff claims that, since 2012, RAC has falsely reported to credit reporting agencies that Plaintiff was delinquent under the lease-to-own contract.  (*Id.* ¶¶ 95-96).  Plaintiff also claims that he reached out to the credit reporting agencies and RAC multiple times in order to resolve the alleged inaccuracies, but that RAC failed to correct the inaccuracies.  (*See id.* ¶¶ 97-105).  Thus, Plaintiff alleges that RAC violated the FCRA by, among other things, failing to conduct an appropriate investigation after being given notice of the alleged inaccuracies in its submissions or by failing to report the results of such an investigation to the credit reporting agencies.  (*Id.* ¶¶ 122-23; *see* 15 U.S.C. § 1681s-2(b)(1)).

RAC contends that when Plaintiff leased the furniture, Plaintiff signed an arbitration agreement.  Specifically, Plaintiff signed a Rental-Purchase Agreement, which included a clause stating that "[a]n arbitration agreement comes with and is incorporated into this rental purchase agreement.  You should read the Arbitration Agreement before signing this document."  (Rental-Purchase Agreement, Doc. 31-1, ¶ 13).  The attached arbitration agreement states that "[e]ither you [that is, Plaintiff] or we [that is, RAC] may require any Claim to be arbitrated.  Either you or we may do so before or after a lawsuit has been started . . . ."  (Arbitration Agreement, Doc. 31-1, ¶ C).  The arbitration agreement broadly defines "Claim" to include "any claim, dispute or controversy between you and us that in any way arises from or relates to the Rental-Purchase Agreement or the leased property . . . ."  (*Id.* ¶ B).  The arbitration agreement further provides that

> "Claim" has the broadest possible meaning and . . . includes initial claims, counterclaims, cross-claims and third-party claims.  It includes disputes based upon contract, tort, fraud and other intentional torts, constitution,

> statute, regulation, ordinance, common law and equity . . . .  It also
> includes disputes about the validity, enforceability, arbitrability or scope of
> this Arbitration Agreement or the Rental-Purchase Agreement.

(*Id*.).  The arbitration agreement states that once a party elects to arbitrate a claim,

"[t]here will be no right to try that Claim in court."  (*Id.* ¶ E).

Plaintiff acknowledges that he signed an arbitration agreement.  (Pl.'s Resp. Def.

RAC's Mot. Dismiss & Compel Arbitration, Doc. 32, at 2).  However, he alleges that the

copy of the arbitration agreement provided to the Court—that is, the copy cited and

quoted above—is not a true copy of the agreement that he signed.  (*Id.* at 1-2). Rather,

Plaintiff contends that

> [w]hile . . . the signature on the alleged contract appears to be [Plaintiff's],
> it is plain as day that the dates written in are not his writing.  Moreover, it
> also appears that certain parts of the alleged agreement were overlaid,
> and said overlays were picked up upon scanning the document, which
> does not appear to be original.

(*Id.* at 1).  Plaintiff has not provided the Court with a copy of the arbitration agreement

that he claims that he signed.

Plaintiff also alleges that he "revoked RAC's right to arbitrate the claims, and

[that] therefore RAC has no right to arbitrate."  (Pl.'s Resp. Def. RAC's Mot. Dismiss &

Compel Arbitration at 2).  While Plaintiff has not provided the Court with a copy of the

arbitration agreement that he claims he signed, the arbitration agreement provided by

RAC indeed contains a right-to-reject clause.  (*See* Arbitration Agreement ¶ A).  That

clause states, "If you don't want this Arbitration Agreement to apply, you may reject it by

mailing us . . . a written rejection notice . . . .  A rejection notice is only effective if it . . .

is postmarked within one (1) week after the date of this Arbitration Agreement."  (*Id.*).

Plaintiff has provided the Court with a copy of a rejection letter that he claims he mailed

to RAC. (Doc. 32-6). The letter is undated, but the body of the letter contains the text, "Please enter this letter as my refusal on this 2nd Day of February 2012." (*Id.*). Plaintiff does not provide the date that he mailed the letter.[1] February 2, 2012, would have been within one week of January 27, 2012, the date that Plaintiff apparently signed the arbitration agreement. (*See* Arbitration Agreement).

RAC initially did not file a reply responding to Plaintiff's factual allegations, but the Court ordered RAC to do so. (*See* Doc. 37).[2] Attached to its reply, RAC provides an affidavit by a manager employed by RAC stating that the copy of the arbitration agreement provided by RAC to the Court is a "true and accurate copy of the original." (Aff. Kyle Huber, Doc. 41-2). RAC also provides an affidavit by a paralegal employed by RAC stating that the paralegal searched RAC's database and found "no record of receipt of an Arbitration Agreement rejection letter from Plaintiff." (Aff. Eva Wadjinny,

---

[1] *See* Pl.'s Resp. Def. RAC's Mot. Dismiss & Compel Arbitration at 3 (stating that "Mr. Malik did in fact send a letter to RAC informing it that he revoked the parties [sic] right to arbitrate any and all claims," but not providing a date); Pl's Br. Supp. Resp. Def.'s Mot. Dismiss & Compel Arbitration, Doc. 32-1, at 2 ("Mr. Malik has presented evidence, in the form of a letter that was sent to RAC *shortly after* the execution of the alleged contract . . . ." (emphasis added)).

[2] Plaintiff filed a written objection to the Court's order requiring RAC to respond. (Doc. 38). RAC admittedly waived its *right* to file a reply when it failed to do so by the applicable deadline. *See* E.D. Mich. LR 7.1(e). But nothing in the Federal Rules of Civil Procedure or Local Rules prohibits the Court from ordering a party to file a response when such a response would be helpful to the Court's resolution of a motion. Thus, the Court was authorized to order the reply pursuant to its "substantial inherent power to manage [its] docket[]." *In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993). In any case, the Court's ruling on the instant motion does not depend on the supplemental affidavits filed by RAC, and therefore Plaintiff cannot claim to have been prejudiced in any way by the Court's order requiring RAC to reply. The Court therefore overrules Plaintiff's objection.

Doc. 41-4).  Plaintiff filed a sur-reply,[3] arguing that neither of RAC's affiants had personal knowledge about whether the copy of the arbitration agreement provided by RAC to the Court was accurate or whether Plaintiff had exercised his right to reject. (*See* Docs. 44, 44-2).  Moreover, Plaintiff provided an unsworn declaration (styled as an affidavit) stating that he had exercised his right to reject by mailing a letter of revocation. (Aff. Jason Malik, Doc. 44-3).  Plaintiff does not state in his declaration when he *mailed* the rejection letter.  (*See id.* ¶ 2 ("I personally *typed* the letter . . . , revoking any arbitration between the parties *on February 2, 2012*." (emphases added)).[4]  Ultimately, the facts asserted in RAC's affidavits and Plaintiff's sur-reply and associated documents have no impact on the Court's resolution of the instant matter, for reasons explained below.

## II. LAW

The Federal Arbitration Act ("FAA") provides that a written agreement to subject a dispute to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  If an issue involved in a suit is "referable to arbitration under an agreement in writing for such arbitration," the court should stay the suit, upon a request by one of the parties.  *Id.* § 3.  The FAA also authorizes a court to issue an order compelling arbitration.  *Id.* § 4. Upon issuing an order compelling arbitration, a court may dismiss the suit, rather than

---

[3]  Contemporaneously with the instant opinion and order, the Court will enter a separate written order granting Plaintiff's motion for leave to file a sur-reply.

[4]  *See also* Pl.'s Sur-Reply, Doc. 44-2, at 2 (explaining that Plaintiff mailed the letter of revocation but not stating the date the letter was mailed).

stay it, where *all* of the issues involved in the suit are subject to arbitration. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *see also Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, No. 13-CV-15189, 2014 WL 562264, at *4 (E.D. Mich. Feb. 13, 2014) (unpublished).

Section 4 of the FAA provides the legal standard and procedure for evaluating a motion to compel arbitration and stay or dismiss.  A court must first  "hear the parties." 9 U.S.C. § 4.  If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*  If, however, "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.*

In order to show that facts concerning the arbitration agreement are "in issue," "the party opposing arbitration must show a genuine issue of material fact." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *see also Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1062 (E.D. Ky. 2015); *Nexteer*, 2014 WL 562264, at *4-*5; *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 864 (N.D. Ohio 2013). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth Companies*, 288 F.3d at 889; *see also Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013).  The evidence and all reasonable inferences concerning the arbitration agreement must therefore be construed in the light most favorable to the party opposing arbitration. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

-6-

supported motion [to compel arbitration]; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). Accordingly, mere allegations or denials in the pleadings will not meet the arbitration opponent's burden, nor will a mere scintilla of evidence supporting the arbitration opponent. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence from which a finder of fact could reasonably find for the party opposing arbitration. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (citing *Anderson*, 477 U.S. at 252).

Ordinarily, a court reviewing a motion to compel arbitration and stay or dismiss must (1) "determine whether the parties agreed to arbitrate," (2) "determine the scope of that agreement," and (3) consider whether Congress intended the issues in the suit "to be nonarbitrable." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)) (internal quotation marks omitted); *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). However, in some arbitration agreements, there is a delegation clause stating that these threshold issues of arbitrability are themselves to be decided through arbitration. As a general matter, such delegation clauses are enforceable. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) ("Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."); *accord Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Thus, where there is clear and unmistakable evidence that the parties intended to refer threshold issues of arbitrability to the arbitration process, the court must decline to resolve such issues and should order that

-7-

they be decided through arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Milan Exp. Co. v. Applied Underwriters Captive Risk Assur. Co.*, 590 F. App'x 482, 484-85 (6th Cir. 2014) (unpublished) (citing *Rent-A-Center*, 561 U.S. at 67-70). Crucially, however, where the party opposing arbitration specifically attacks the validity of the delegation clause itself, the court must still decide the validity of the delegation clause before it can refer the purportedly delegated threshold issues to arbitration. *Rent-A-Center*, 561 U.S. at 71.

### III. DISCUSSION

There is no genuine dispute that Plaintiff signed *some* arbitration agreement with RAC. Plaintiff claims that the copy of the arbitration agreement provided by RAC to the Court is not a true copy, but he does not deny that he signed an arbitration agreement. Furthermore, Plaintiff fails to identify any way in which the copy of the arbitration agreement offered by RAC differs from the version that he claims that he signed. Most significantly, Plaintiff has not denied that the version of the arbitration agreement that he signed contained a delegation provision referring "disputes about the validity, enforceability, arbitrability or scope of this Arbitration Agreement or the Rental-Purchase Agreement" to arbitration. (Arbitration Agreement ¶ B). Thus, assuming that this delegation clause is valid, it will be for the arbitrator to decide the scope of the arbitration agreement. This means (again, assuming that the delegation clause is valid) that it will be for the arbitrator to resolve any disputes over the terms of the arbitration agreement, insofar as Plaintiff continues to claim that the version provided by RAC is not the true agreement.

-8-

Therefore, the only questions that the Court must resolve are (1) whether Plaintiff has raised arbitrability challenges concerning the delegation clause itself and (2) whether any of these arbitrability challenges have merit.  If the answer to either of these questions is no, then the Court must order arbitration of the issues concerning the applicability and scope of the arbitration agreement.

The answer to the first of these two questions appears to be negative, at first blush.  Plaintiff's central arbitrability challenge is that he exercised his right to reject arbitration.  Ordinarily, this would be a challenge to the arbitration agreement as a whole and not a specific challenge to the delegation clause.  Thus, ordinarily, this issue would itself fall within the terms of the delegation clause and would be subject to arbitration. *See Rent-A-Center*, 561 U.S. at 71 ("[E]ven where [the challenge to the arbitration agreement as a whole applies equally to the clause within that agreement delegating issues of arbitrability to the arbitration process, the Court] nonetheless require[s] the basis of challenge to be directed *specifically* to the agreement to arbitrate [the arbitrability issues] before the court will intervene." (emphasis added)); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (holding that a fraud-in-the-inducement challenge to the contract as a whole, that would indirectly have invalidated the arbitration clause contained within the contract, was properly referred to arbitration rather than resolved by the district court).[5]

---

[5]  It seems somewhat harsh and formalistic to hold that even in circumstances in which the challenge to the arbitration agreement as a whole would invalidate the delegation clause as a necessary consequence, a challenge to the arbitration agreement as a whole nonetheless does not constitute a challenge to the delegation clause.  But this is indeed the holding of the Supreme Court.  *See Rent-A-Center*, 561 U.S. at 85 (Stevens, J., dissenting) ("[T]he Court adds a new layer of

However, it is not entirely clear whether it would be appropriate to sever the delegation clause from the rest of the arbitration agreement in the instant case, since the delegation clause in the instant case is embedded within the definition of "claim" in the arbitration agreement and does not appear to constitute a completely independent arbitration agreement. Thus, the instant case is somewhat distinguishable from *Rent-A-Center*. Therefore, the Court will assume, for the sake of argument, that Plaintiff's argument concerning the rejection letter constitutes a proper challenge to the delegation clause. Accordingly, the Court turns to the second question—namely, whether Plaintiff's argument concerning the rejection letter has merit.

Plaintiff's argument concerning the rejection letter lacks merit. Plaintiff has failed to raise an issue of material fact concerning whether he exercised the right-to-reject clause of the arbitration agreement. Although Plaintiff states that the copy of the Arbitration Agreement provided by RAC is not a true copy, Plaintiff does not dispute any of its terms. Thus, Plaintiff does not dispute that the right-to-reject clause provides that a rejection notice is effective only if it "is postmarked within one (1) week after the date of" the arbitration agreement. (Arbitration Agreement ¶ A). Moreover, the arbitration agreement offered by RAC is dated January 27, 2012, and although Plaintiff contends that somebody other than he dated the agreement, he does not dispute that this was

---

severability—something akin to Russian nesting dolls—into the mix: Courts may now pluck from a potentially invalid arbitration agreement even narrower provisions that refer particular arbitrability disputes to an arbitrator. I do not think an agreement to arbitrate can ever manifest a clear and unmistakable intent to arbitrate its own validity." (citation and emphasis removed)); *Prima Paint*, 388 U.S. at 407 (Black, J., dissenting) ("The Court holds, what is to me fantastic, that the legal issue of a contract's voidness because of fraud is to be decided by persons designated to arbitrate factual controversies arising out of a valid contract between the parties.").

the date that he signed the rental agreement or arbitration agreement.  Therefore,

Plaintiff does not dispute that in order to exercise his right to reject, he was required to

mail a rejection notice by February 3, 2012.  Plaintiff has offered an undated letter that

informs the recipient, "Please enter this letter as my refusal on this 2nd Day of February

2012."  (Doc. 36-2).  Plaintiff nowhere states that he mailed the letter by February 3,

2012.  Therefore, Plaintiff's letter and his claims concerning it fail to raise a genuine

dispute of material fact.  There is no genuine dispute that Plaintiff failed to exercise the

right-to-reject clause.[6]

_____

[6] Plaintiff raises a slew of challenges to RAC's evidence, arguing that RAC's exhibits have not been properly authenticated and that RAC's affidavits are not based on personal knowledge.  The Court has not relied on RAC's affidavits.  Accordingly, the Court need not resolve Plaintiff's foundation challenges.  And, as noted above, Plaintiff does not dispute that he signed an arbitration agreement or challenge any of the terms of the arbitration agreement offered by RAC.  Therefore, the Court need not resolve the authenticity of the arbitration agreement offered by RAC.

Plaintiff also asserts that the mailbox rule shifts the burden to RAC to disprove that Plaintiff mailed the rejection letter.  *See Aetna Life Ins. Co. v. Montgomery*, 286 F. Supp. 2d 832, 839 (E.D. Mich. 2003) ("Under the common law mailbox rule, the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time.").  Plaintiff has not claimed, however, that he mailed the letter by the rejection deadline.  Thus, the mailbox rule has no application here.

Finally, it is worth noting that although the Court has accepted Plaintiff's allegations and evidence for the purpose of the instant opinion and order, the Court was not required to do so.  The reason is that Plaintiff has not offered any competent evidence.  Plaintiff offered a purported affidavit in his sur-reply, but the affidavit was not properly sworn, and it moreover did not satisfy the requirements for an unsworn declaration under penalty of perjury.  *See* 28 U.S.C. § 1746.  The standard for resolution of a motion to compel arbitration is the summary-judgment standard, and "[a]n unsworn affidavit cannot be used to support or oppose a motion for summary judgment."  *Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th Cir. 1998).  RAC admittedly also filed an unauthenticated copy of the arbitration agreement, as Plaintiff points out, but RAC's mistake was harmless because Plaintiff does not actually dispute any of the terms of the arbitration agreement.  Moreover, RAC later remedied this defect by supplying an affidavit in its Reply.  RAC was apparently initially under the mistaken assumption that Federal Rule of Civil Procedure 12(b)(6) supplied the standard for

In sum, the Court is required to compel arbitration of the threshold arbitrability issues raised by Plaintiff.  Because it is possible that these issues may be resolved against RAC, it is possible that the substantive issues in this case will not be subject to arbitration.  For the Court to now hold otherwise would be to usurp the arbitrator's prerogative to decide arbitrability.  *Cf. AT & T Tech., Inc. v. Commc'n Workers or Am.*, 475 U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.").  Therefore, the Court will stay the instant action (as it concerns defendant RAC) pending arbitration of the threshold arbitrability issues rather than dismiss the claims against RAC.  *See Levy v. Cain, Watters & Associates, P.L.L.C.*, No. 2:09-CV-723, 2010 WL 271300, at *7 (S.D. Ohio Jan. 15, 2010) (unpublished).

## IV. CONCLUSION

Therefore, RAC's motion to dismiss and compel arbitration (Doc. 31) is GRANTED IN PART and DENIED IN PART.  The Court ORDERS that any threshold arbitrability challenges raised by Plaintiff be arbitrated in accordance with the terms of the arbitration agreement.  The Court will NOT DISMISS the claims against defendant RAC.  The Court will, however, STAY the proceedings in the instant action to the extent that they concern defendant RAC.  If the arbitrator resolves the threshold arbitrability issues in favor of RAC, such that all issues in the instant case are determined to be

---

ruling on a motion to compel arbitration.  At any rate, the Court has accepted Plaintiff's unsworn claims in his filings and still finds that there is no genuine issue of material fact, as explained in the analysis above in this opinion.

subject to arbitration, RAC may of course petition this Court at that later time for

dismissal.

        IT IS SO ORDERED.

Dated:  July 19, 2016

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE


---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 19, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---

-13-